# ARMED SERVICES BOARD OF CONTRACT APPEALS

| | | |
|---|---|---|
| Appeals of -- | ) | |
| | ) | |
| Amaratek | ) | ASBCA Nos. 59149, 59395 |
| | ) | |
| Under Contract No. W9124R-11-P-1054 | ) | |

APPEARANCE FOR THE APPELLANT:    Mr. David P. Dumas
   President

APPEARANCES FOR THE GOVERNMENT:    Raymond M. Saunders, Esq.
   Army Chief Trial Attorney
   CPT Cali Y. Kim, JA
   Trial Attorney

## OPINION BY ADMINISTRATIVE JUDGE MCILMAIL

In these consolidated appeals, appellant, Amaratek, seeks compensation for work performed in October 2013, during part of which the government shut down appellant's operations. Appellant elected to proceed under Board Rule 12.2,[1] and the parties have waived an oral hearing. Both entitlement and quantum are at issue. The Board sustains the appeals, in part, and denies them, in part.

## FINDINGS OF FACT

On 26 May 2011, the Department of the Army, Mission & Installation Contracting Command Center-Yuma (government) awarded appellant Contract No. W9124R-11-P-1054 for material analysis laboratory services at the Yuma Proving Ground in Yuma, Arizona (R4, tab 1 at 1, 3). The total award amount was $977,432 (*id.* at 1). The contract provided for a base period of 1 July 2011 through 30 June 2012, and two options periods: 1 July 2012 through 30 June 2013, and 1 July 2013 through 30 June 2014 (R4, tab 1 at 8-9, 13). Option Period 2, from 1 July 2013 through 30 June 2014, consisted of 12 units of service of one month each, with each unit priced at $58,947 (R4, tab 1 at 13). The contract was a Commercial Items contract and incorporated by reference the Federal Acquisition Regulation (FAR) 52.212-4, CONTRACT TERMS AND CONDITIONS—COMMERCIAL ITEMS (JUNE 2010) (R4, tab 1 at 21).

---

[1] A decision under Board Rule 12.2 shall have no value as precedent, and in the absence of fraud, shall be final and conclusive and may not be appealed or set aside.

The contract also incorporated by reference the FAR 52.242-15, STOP-WORK ORDER (AUG 1989) clause (R4, tab 1 at 21), which provides, at paragraph (b):

> If a stop-work order issued under this clause is canceled or the period of the order or any extension thereof expires, the Contractor shall resume work. The Contracting Officer shall make an equitable adjustment in the delivery schedule or contract price, or both, and the contract shall be modified, in writing, accordingly, if--
>
> (1) The stop-work order results in an increase in the time required for, or in the Contractor's cost properly allocable to, the performance of any part of this contract; and
>
> (2) The Contractor asserts its right to the adjustment within 30 days after the end of the period of work stoppage; *provided*, that, if the Contracting Officer decides the facts justify the action, the Contracting Officer may receive and act upon a proposal submitted at any time before final payment under this contract.

On 27 June 2013, the government exercised Option Period 2 for the period 1 July 2013 through 30 June 2014 (app. 19 August 2014 br., attach. A, Mod. No. P00015). On 1 October 2013, at 11:10 a.m., the government ordered appellant to stop work, citing "the Government shutdown in the absence of FY2014 appropriations" (R4, tab 3). On 22 October 2013, at 3:18 p.m., the government authorized appellant to "recall personnel in support of the subject contract" (R4, tab 11). On 23 October 2013, the government modified the contract "to obligate additional Fiscal Year 2013 funding" (R4, tab 12).[2]

On 6 November 2013, appellant presented Invoice No. 2030 to the government, requesting payment in the amount of $62,718.35, for services and supplies for October 2013 (R4, tab 13). On 21 November 2013, the government rejected the invoice, and requested that appellant resubmit the invoice "prorated to reflect only that portion of the month for which funds were available and that service was actually performed (the six workdays from October 23-31, 2013)" (*id.*). Later on 21 November 2013, appellant presented to the contracting officer (CO) a Request for Equitable Adjustment (REA), in the amount of $69,677: $58,947 for services provided in October 2013, and $10,730 in costs that appellant asserted were caused by the government's order to stop

---

[2]  It is unclear whether the reference to "Fiscal Year 2013 funding" should read "Fiscal Year 2014 funding," given the October 2013 date of the modification.

work (R4, tab 14). The REA "request[e]d an equitable adjustment of $10,730 beyond the $58,947 due" (*id.* at 4-5). The REA states that:

> These added costs were a direct result of the government shutdown, failure to allocate funds for [appellant's] contract, and the issuance of a stop work order. The total cost beyond the standard monthly labor cost of $58,947 that should be equitably added is $10,730.
>
> ...[I]t is [appellant's] position that the standard monthly labor cost of $58,947 should not be prorated for the percentage of days work. Rather, this amount should be paid in full....
>
> ...[T]he full amount of $58,947 is rightfully due to [appellant].
>
> ....
>
> ...[Appellant] has demonstrated...that it is entitled to an equitable adjustment as a direct result of the government's failure to allocate funds to its contract and the issuance of a stop work order.

(*Id.* at 3-4)

The CO denied the REA on 6 February 2014 (R4, tab 17). The denial is not labeled a final decision, and does not apprise appellant of appeal rights. Appellant filed an appeal docketed as ASBCA No. 59149 on 7 February 2014, from the denial of the REA. On 24 April 2014, appellant submitted to the CO a certified claim in the amount of $81,161.75,[3] based upon the same facts as was based the 21 November 2013 REA. The CO has not issued a final decision upon that claim. On 1 July 2014, appellant filed an appeal docketed as ASBCA No. 59395, ostensibly from the "deemed denial" of the 24 April 2014 certified claim.

---

[3] Under the Contract Disputes Act (CDA), only claims over $100,000 require certification. 41 U.S.C. § 7103(b)(3).

DECISION

*Jurisdiction*

The Board possesses jurisdiction to entertain these appeals. A contractor's submission of a valid CDA claim in writing to the CO for decision, and a contractor's appeal from that decision, or from the CO's failure timely to issue a decision, are prerequisites to the Board's jurisdiction to entertain its appeal. *Madison Lawrence, Inc.*, ASBCA No. 56551, 09-2 BCA ¶ 34,235 at 169,206. Appellant's 21 November 2013 REA is a valid CDA claim because it is a "written assertion...seeking, as a matter of right, the payment of money in a sum certain" (FAR 2.101 (defining "claim")); namely, $69,677, consisting of (1) $58,947 for services provided in October 2013, and (2) an equitable adjustment in the contract price in the amount of $10,730. The government denied that claim on 6 February 2014, and, on 7 February 2014, appellant timely appealed from that denial, and it was docketed as ASBCA No. 59149.

Appellant's 24 April 2014 submission to the CO is also a valid CDA claim, for $81,161.75. By 1 July 2014, when appellant filed the appeal in ASBCA No. 59395, more than 60 days had passed since the submission of that claim. Therefore, the claim is deemed denied. *Aqua-Fab, Inc.*, ASBCA No. 34283, 87-2 BCA ¶ 19,851 at 100,440.

*Merits*

Appellant is entitled to $58,947 for service provided in October 2013. When it exercised Option Period 2, the government ordered 12 units of monthly service at $58,947 per unit. The government received service in October 2013, albeit, by the government's count, for only six days (R4, tab 13). That the government received only a few days of service in October 2013 is attributable to the government's order that appellant stop providing service during part of October 2013 (*id.*). In this respect, this case is not like *Olympiareinigung, GmbH*, ASBCA No. 53643, 04-1 BCA ¶ 32,458, or *B.F.I. Waste Systems*, ASBCA No. 30076, 86-2 BCA ¶ 18,842, both of which were cited by the government. In those cases the units of work that the government contended were not provided were the same units specified in the contracts: square meters in *Olympiareinigung*, and cans and trips *B.F.I. Waste Systems*. Here, the government relies upon a unit of work that the contract does not specify (days) instead of the unit of work that the contract specifies (months). Because the government ordered service for the month of October 2013, and received all the service it allowed appellant to provide during that month, it owes appellant the contract's unit price for that service: $58,947.

This case is also not like *South Pittsburgh Cable Co.*, ASBCA No. 40014, 91-3 BCA ¶ 24,125, also cited by the government. There, the government asserted a

4

deductive change claim. Here, the appeal is from a contractor claim for services rendered, not a government claim for a credit for the value of unperformed work. Nor does FAR clause 52.242-15 help the government. The stop work clause concerns (1) the government's right to order a work stoppage, and (2) whether a contractor is entitled to an increase in the contract price in the event of such a stoppage. Whether appellant is entitled to the unit price for work that the government ordered concerns neither the government's right to stop work nor an increase in the contract price. Because the government received the service it allowed appellant to provide in October 2013, appellant is entitled to the unit price for October 2013 – $58,947 – with interest pursuant to the CDA, 41 U.S.C. § 7109(a)(1), from 21 November 2013 (the date the CO received the certified claim) until the date of payment.[4] The government has pointed to no provision in the contract that gave it the authority to avoid paying the monthly charge.

*Equitable Adjustment of the Contract Price*

Appellant does not demonstrate entitlement to an equitable adjustment in the contract price. Appellant presented the REA to the CO on 21 November 2013, within 30 days of the 22 October 2013 end of the period of work stoppage; consequently, under FAR 52.242-15(b), the issue is whether the stop-work order resulted in an increase in the time required for, or in the Contractor's cost properly allocable to, the performance of any part of the contract.

Appellant is not entitled to any additional amounts. Appellant seeks two categories of "costs": (1) $5,810 for what appellant characterizes as the cost of terminating a research and development project, (2) $64,206 in 261 hours of what appellant characterizes as contract administration performed by its president, Mr. David P. Dumas, through 15 October 2014 (app. 14 October 2014 br. at 34).

First, appellant cannot recover $5,810 for the termination of a research and development project. That "cost" appears to consist of "lost profits" that appellant contends would have been realized if it had not had to shut down a research and development program as part of the October 2013 government shutdown (app. 19 August 2014 br. at 43). However, lost profits that might have been realized on other business endeavors are too remote and speculative to be compensable. *Muhtesem Co.*, ASBCA No. 57538, 12-1 BCA ¶ 34,946 at 171,815.

---

[4]   We reject any request for Prompt Payment Act interest upon the as-yet unpaid $58,947 for October 2013. Payment of that amount has been in dispute between the parties (R4 tabs 13, 14); therefore, pursuant to 31 U.S.C. § 3907(c), Prompt Payment Act interest is not applicable. *See Dillingham Construction Pacific Basin, Ltd.*, ASBCA Nos. 53284, 53414, 03-1 BCA ¶ 32,098 at 158,664.

Second, appellant does not demonstrate entitlement to an increase in the contract price for additional contract administration costs. The timesheets for Mr. Dumas for the weeks ending 5 October 2013 through 18 October 2014 reflect that nearly all of the labor hours for which appellant seeks compensation were incurred in connection with the prosecution of appellant's claim against the government (including these appeals filed in 2014), and, therefore, are not recoverable. *See Bill Strong Enterprises, Inc. v. Shannon*, 49 F.3d 1541, 1549-50 (Fed. Cir. 1995), *overruled on other grounds by Reflectone, Inc. v. Dalton*, 60 F.3d 1572, 1579 n.10 (Fed. Cir. 1995). Although the timesheets also note 12 "shutdown" hours performed by Mr. Dumas in October 2013, the documentary record does not provide sufficient information from which to determine that those hours reflect (as required by FAR 52.242-15) "an increase in the time required for, or in the Contractor's cost properly allocable to, the performance of any part of this contract." Indeed, the timesheets appear to demonstrate no such increase: Mr. Dumas worked 40 hours per week both before and during the shutdown. (App. 14 October 2014, attach. 1)

## CONCLUSION

For these reasons, the Board sustains the appeals in the single amount of $58,947, with interest upon that amount pursuant to the CDA, 41 U.S.C. § 7109(a)(1), from 21 November 2013 until the date of payment. The appeals are otherwise denied.

Dated: 10 November 2014

TIMOTHY P. MCILMAIL
Administrative Judge
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 59149, 59395, Appeals of Amaratek, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals

6