ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of -- ) | |
| ) | |
| Parsons Evergreene, LLC ) | ASBCA No. 58634 |
| ) | |
| Under Contract No. FA8903-04-D-8703 ) | |

APPEARANCES FOR THE APPELLANT:     Douglas S. Oles, Esq.
                                   James F. Nagle, Esq.
                                   Adam K. Lasky, Esq.
                                   Howard W. Roth III, Esq.
                                     Oles Morrison Rinker & Baker, LLP
                                     Seattle, WA

APPEARANCES FOR THE GOVERNMENT:    Jeffrey P. Hildebrant, Esq.
                                     Air Force Deputy Chief Trial Attorney
                                   Lori R. Shapiro, Esq.
                                     Trial Attorney

## OPINION BY ADMINISTRATIVE JUDGE CLARKE ON APPELLANT'S MOTION FOR RECONSIDERATION

The Board issued its decision in this appeal on September 5, 2018. Parsons Evergreene (PE) received the decision on September 10, 2018, and timely filed its motion for reconsideration on October 10, 2018. PE requests reconsideration of the Board's decision concerning Structural Brick, Triarch and Claim Preparation/REA Modification Costs (app. mot. at 1). We will deal with each separately. We have jurisdiction pursuant to the Contract Disputes Act of 1978 (CDA), 41 U.S.C. §§ 7101-7109. We deny the motion.

## DISCUSSION

*Standard for Reconsideration*

Parsons Evergreene (PE) must demonstrate a compelling reason for the Board to modify its decision. *J.F. Taylor, Inc.*, ASBCA Nos. 56105, 56322, 12-2 BCA ¶ 35,125. The standard we apply for reconsideration is "[t]o prevail on reconsideration, the moving party must generally establish that the underlying decision contained mistakes in our findings of facts or errors of law or that newly discovered evidence warrants vacating our decision." *DODS, Inc.*, ASBCA No. 57667, 13 BCA ¶ 35,203 at 172,711. Motions for reconsideration are not intended to provide a party with an opportunity to reargue issues previously raised and denied. *CI², Inc.*, ASBCA No. 56257, 15-1 BCA ¶ 35,829 at 175,194.

*Structural Brick Claim*

*Contentions of the Parties*

PE contends that the Board made a mistake of fact and error of law when it failed to use Mr. Tengler's estimate of the cost PE would have avoided had it been allowed to use its single-wall structural brick design rather than the double-wall (8-inch CMU[1] block and 4-inch brick veneer). *Parsons Evergeene, LLC.* ASBCA No. 58634. 18-1 BCA ¶ 37.137 at 180.734. finding 6. More specifically PE writes:

> [T]he Board has made a mistake in fact where it finds: "we are unable to calculate the amount PE is entitled to" for the added costs due to Government rejection of the "Structural Brick" Design. Moreover. the Board has made an error of law by applying a legal standard that rejects use of an estimate in circumstances that effectively require reliance on an estimate.

(App. mot. at 10) PE seeks $2,195,588 (*id.* at 15).

In its opposition the Air Force (AF) presents a table with a side-by-side comparison of sections in PE's motion and PE's post-hearing brief (gov't resp. at 13-14). The AF argues that this comparison proves that the structural brick argument in PE's motion is "an attempt to relitigate the issues already heard and decided by the Board" (*id.* at 13). The AF also contends that PE "fails to cite any testimony or evidence that was overlooked in the Board's Opinion." Additionally there was "no legal error in denying the costs claimed by Appellant based on the Estimate." (*Id.* at 15)

*Discussion*

PE's argument misses the point we clearly made in our decision. PE apparently believes the Board found entitlement for the total increased cost of having to build to the double-wall design rather than the structural-brick design. That is not what we held. We held, "The AF is responsible for the additional design and construction costs incurred to change the Baker 35% design to resist progressive collapse." *Parsons*, 18-1 BCA ¶ 37.137 at 180,794. The entirety of PE's basis for reconsideration is PE's mischaracterization of the Board's structural brick decisions.

The decision dealt with structural brick in two parts – design and construction. We found the AF liable for the additional costs PE incurred to design changes required to make the Baker 35% design resist progressive collapse. 18-1 BCA ¶ 37,137 at 180.794.

---

[1] Concrete masonry unit.

PE explained in its post-hearing brief that it "completed its 100% design within its bid budget" and that its design impact claim was for an "overrun." *Id.* at 180,794. The Board understood this overrun was directly related to modifications to the design to resist progressive collapse.[2] We awarded PE $722,176 for the additional design effort relating to progressive collapse. *Id.* at 180,795.

The second part of the structural brick decision was for the actual cost of construction of the design changes needed to make the VQ resist progressive collapse. We held that the AF was liable for these construction costs but that we could not calculate a quantum amount and consequently awarded nothing. 18-1 BCA ¶ 37,137 at 180,812-13. PE attacks our holding stating that we committed both factual and legal error because we did not adopt Mr. Tengler's estimate of the cost PE would have avoided had it been allowed to use its single-wall structural brick design rather than the double wall. Contrary to PE's argument, we have no problem with the use of estimates, however, Mr. Tengler's estimate was the wrong estimate. Mr. Tengler's estimate was for the total cost savings PE would have realized had it been allowed to use the structural brick design. This estimate was not for the cost of constructing the modifications necessary to make the VQ resist progressive collapse, which is what we needed. Looking at Mr. Tengler's estimate, it is titled, "Structural Brick in Lieu of Double Wythe System – Total Cost Savings." We see that $1,192,725 of the $1,906,401 estimate (63%) was "Decreased Cost of Structural Brick vs CMU + Facebrick." (R4, tab 3154) We do not see how the cost of facebrick veneer over the CMU wall has anything to do with progressive collapse. Importantly, if it does, PE failed to meet its burden of proof tying the two together. We paraphrase what we said in our decision: there is no logical relationship between Mr. Tengler's estimate of total cost savings and the increased cost of construction solely attributed to what was needed to modify the VQ to resist progressive collapse. 18-1 BCA ¶ 37,137 at 180,812. We also disagree that it was impossible for PE to either estimate the cost to construct the design changes, based on drawing changes, or, better yet, track the actual costs of construction limited to the changes needed to resist progressive collapse. We deny PE's motion for reconsideration relating to structural brick.

*Triarch Claim*

*Contentions of the Parties*

PE argues that the information needed to determine quantum is in the record. PE points out that its VQ painting subcontract with KRN had a value of $357,000 and that reducing that amount by a $48,400 credit would result in a quantum amount of $308,600 (app. mot. at 17). PE contends that the Board erred by not considering these facts. PE also argues that under the circumstances "it would seem reasonable to add a further

---

[2] Had we interpreted this portion of the claim otherwise, we may not have awarded PE these design costs.

3

allowance for PE's management and staff time on this issue." (*Id.*) PE seeks $440,137 (*id.* at 18).

The AF argues that PE in its motion for reconsideration "presents an entirely new argument that was not previously presented prior to the close of the record, or even prior to the Board's Opinion" (gov't resp. at 19). The AF argues that PE's attempt to have the Board consider this new argument "falls squarely within the prohibition that parties not use the reconsideration procedure to relitigate its claims" (*id.*).

*Discussion*

The problem here is that PE apparently was so confident in its primary argument that the RFP did not require Triarch in the VQ, it failed to include an alternative argument concerning the AF's erroneous direction to apply paint in the VQ. We do not criticize PE. As evidenced by thousands of Rule 4 tabs, tens of thousands of Rule 4 pages, 1,500 pages of briefs and our almost 100-page decision (*Parsons*, 18-1 BCA ¶ 37,137 at 180,733-827), the record was massive and the number of issues for the parties and the Board to deal with was extraordinary. Although we understand why PE did not argue every possible alternative theory of recovery, the failure to argue alternative theories has consequences. Having failed to provide us a basis for award in the Triarch claim, the Board had no way to quantify the AF's liability for the VQ painting.

It is well known that the "burden of proof is upon the party asserting a right," in this case PE. *Black Tiger Company*, ASBCA No. 59819, 18-1 BCA ¶ 37,046 at 180,336. After our decision was issued, PE has apparently found the evidence of quantum in the record that the Board needed. PE presents arguments based on that evidence in its motion. PE does not attempt to reargue issues previously raised and denied. We consider the three criteria justifying vacating our decision on reconsideration: mistakes in our findings of fact, errors of law or newly discovered evidence. PE does not contend we made an error of law. Since the evidence was in the record and is not "newly discovered," we cannot see how that basis for vacating our decision applies. Turning to mistakes in our findings of fact, PE points to no facts in our Triarch decision that are mistaken. Instead, PE contends that we "mistakenly" failed to consider the facts it now, for the first time, presents. (App. mot. at 16-17) Stating the obvious, it was not the Board's obligation to search the record for evidence of quantum to meet PE's burden of proof. *Cf. Smithkline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried in briefs.")). We were not mistaken in failing to consider facts in the record that PE did not bring to our attention. We know of no precedent that provides for successful reconsideration resulting from new argument based on evidence in the record that was not previously used in the briefs. We deny PE's motion for reconsideration relating to the Triarch claim.

4

*Claim & REA Proposal Claims*

*Contentions of the Parties*

PE presents a six-page factual analysis in support of its contention that "the record included clear evidence that REA preparation, revision and negotiation continued from the project Beneficial Occupancy Date (BOD) of 11 September 2008 at least through around the end of 2011 and submission of the last REA on November 30, 2011" (app. mot. at 20). PE cites to record evidence, including Work Breakdown System (WBS) codes and expert evidence, it contends proves that the claim and REAs supported active negotiations (*id.* at 22-23). In its five-page legal analysis PE cites *Bill Strong Enterprises, Inc. v. Shannon*, 49 F.3d 1541 (Fed. Cir. 1995), arguing there is a "strong presumption" that if a contractor submits REAs rather than CDA claims it is for the purpose of "materially furthering the negotiation process" (app. mot. at 25-26). PE includes an argument that the Board should employ jury verdict to calculate and award costs (*id.* at 31-33).

The AF argues that PE initially rejected the argument "that it must prove that these costs were incurred in furtherance of an ongoing negotiation process" and now admits its obligation to do so (gov't resp. at 23). According to the AF, PE's motion presents a revised claim and new evidence in Exhibit 1, without satisfying prerequisites to re-open the record. The AF submits that PE's Exhibit 1 should "be stricken." (Gov't resp. at 24) The AF contends that PE continues to fail to meet its burden of proof and that jury verdict is not appropriate (*id.* at 26-27, 29).

*Discussion*

PE's entitlement argument for these claims consisted of one short paragraph for each claim (app. br. at 314-15). PE's entitlement argument is essentially that the costs were not challenged/questioned (*id.*). PE's quantum section adds nothing more to support entitlement (*id.* at 473-74).

In our decision we pointed out that to prove entitlement PE must prove that the claimed costs were incurred to materially further the negotiation process. 18-1 BCA ¶ 37,137 at 180,808-10. In its post-hearing brief, PE presented no argument and directed us to no evidence that the costs were incurred to materially further the negotiation process. As a result, we found in both cases that PE failed to meet its burden of proof. Now, in its motion for reconsideration, PE presents a new argument based on "old" evidence that was in the record when it wrote its post-hearing briefs to prove the claimed costs were incurred to materially further negotiations. (App. mot. at 20-31) In its motion PE states:

> Where the Board's Opinion finds that "PE totally
> failed in its burden of proof that the costs were incurred 'for

5

purposes of materially furthering negotiation process'", that finding is not supported by the record.

(*Id.* at 27)

Our analysis is very similar to our Triarch decision above. PE does not attempt to reargue issues previously raised and denied. We consider the three criteria justifying vacating our decision on reconsideration: mistakes in our findings of fact, errors of law or newly discovered evidence. PE does not contend we made an error of law. As we stated above, since the evidence was in the record and is not "newly discovered," we cannot see how that basis for vacating our decision applies. The only findings of fact for these claims were findings 171-76 that quoted the two paragraphs from PE's post-hearing brief referenced above. 18-1 BCA ¶ 37,137 at 180,777. PE does not contend there are mistakes in findings 171-76. PE again asks us to consider new arguments based on evidence in the record but not used in its post-hearing briefs. As explained in our Triarch decision above, we decline to do so. We deny PE's motion for reconsideration relating to the claim preparation and REA modification claims.

## CONCLUSION

For the reasons stated above PE's motion for reconsideration is denied.

Dated: January 23, 2019

CRAIG S/CLARKE
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

J. REID PROUTY
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

6

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 58634, Appeal of Parsons Evergreene LLC, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals