**PLANO BUILDERS CORP., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 91–1662C.

United States Court of Federal Claims.

March 24, 1998.

Charles M. Greenberg, Edmonds, WA, for plaintiff.

Brian S. Smith, with whom were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, and Jeanne E. Davidson, Assistant Director, Washington, DC, for defendant.

## OPINION

ANDEWELT, Judge.

### I.

In this government contract action, plaintiff, Plano Builders Corporation (Plano), seeks to recover certain costs incurred by its mechanical subcontractor, R–K Mechanical, Inc. (R–K), relating to a contract plaintiff entered with the United States Army Corps of Engineers. The prime contract covered the demolition and reconstruction, including asbestos removal, of the interior of the KC–135 R Alter Headquarters Operations Facility (Building 500) at Malmstrom Air Force Base in Great Falls, Montana. This action is before the court on the parties' cross-motions for summary judgment. For the reasons set forth below, plaintiff's motion for partial summary judgment is denied and defendant's cross-motion for summary judgment is granted.

### II.

The material facts are not in dispute. The government and Plano entered the prime contract on September 16, 1987, and Plano subcontracted with R–K for demolition and mechanical systems work under the prime contract on September 28, 1987. Unexpected obstacles, including the discovery of more asbestos in the building than originally anticipated, delayed Plano's and R–K's performance of the contract work. Although Plano and R–K continued work under the contract, the parties entered negotiations concerning possible adjustments to the contract price to address the unexpected delays. These negotiations continued after performance under the contract was completed on June 30, 1990.

During 1987 and 1988, Plano and R–K presented four claims to the contracting officer involving the asbestos removal work. The contracting officer criticized the claims and the supporting documentation as difficult to analyze. In response, in September 1989, R–K hired a consulting firm, Excell, Inc. (Excell), to assist in clarifying these claims. Excell's work, which it completed in February 1990, ultimately covered not only the subject matter of the four previously filed claims, but also additional work for which R–K believed compensation was appropriate under the contract. Based in part upon Excell's work, on July 11 and October 8, 1990, Plano and R–K submitted to the contracting officer new claims (the 1990 claims), certified according to the Contract Disputes Act (CDA), 41 U.S.C. §§ 601–613. The 1990

claims sought compensation for the work covered in the prior four claims plus additional compensation for items not covered in the earlier claims, including the consulting fees R–K paid to Excell. Excell's work product was presented to the government for the first time in conjunction with the submission of the 1990 claims.

The contracting officer granted plaintiff only part of the compensation requested in the 1990 claims and plaintiff responded by filing the instant complaint. The parties subsequently settled all issues raised in the complaint except for plaintiff's alleged entitlement to recover $103,562 for the consulting fees R–K paid to Excell. That issue is the subject of the instant cross-motions for summary judgment.

## III.

### A.

The parties agree that plaintiff's entitlement to recover the fees in dispute is controlled by the applicable provisions of the Federal Acquisition Regulations (FAR).[1] Subject to specified limitations, the FAR permits government contractors to recover reasonable fees paid to consultants. *See* 48 C.F.R. § 31.205–33(a) ("Costs of ... consultant services ... are allowable....").[2] One of the specified limitations is contained in FAR 31.205–47(f), which provides as follows:

Costs not covered elsewhere in this subsection are unallowable if incurred in connection with—

(1) ... the prosecution of claims or appeals against the Government (see 33.201).

FAR 31.205–47(a) defines "costs" as including "the costs of the services of accountants, consultants, or others retained by the contractor to assist it." Defendant contends that FAR 31.205–47(f) is determinative and the fees R–K paid to Excell are not recoverable because these fees were incurred "in

connection with ... the prosecution of claims ... against the Government." Plaintiff responds that the fees were incurred as part of contract administration rather than "in connection with ... the prosecution of claims ... against the Government" and hence are recoverable.

### B.

To resolve the issues raised in the cross-motions, the court must determine the plain meaning of the phrase "in connection with ... the prosecution of claims ... against the Government" and then apply that meaning to the instant facts. The term "prosecution" is defined as encompassing "every step in an action, from its commencement to its final determination." *Black's Law Dictionary* 1221 (6th ed.1990). Hence, in interpreting FAR 31.205–47(f), the court initially must determine what constitutes the first step, *i.e.,* the commencement, of the prosecution of a claim.

As quoted above, after referring to the prosecution of claims, FAR 31.205–47(f) specifically cross references FAR 33.201, which in turn discusses the submission of a claim to the contracting officer. FAR 33.201 provides:

"Claim," as used in this subpart, means a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract. [A] written demand or written assertion by the contractor seeking the payment of money exceeding $50,000 is not a claim under the [CDA] until certified as required by the [CDA] and 33.207.[3]

The clear implication of the reference in FAR 31.205–47(f) to FAR 33.201 is that the contractor's submission of a claim pursuant to FAR 33.201 constitutes a part of the pros-

---

1. Unless otherwise noted, references to the applicable provisions of the FAR refer to the 1989 version which was in effect on July 11, 1990, when plaintiff submitted to the contracting officer the first 1990 claim based on Excell's work. Subsequent pertinent changes to the wording and location of the regulations are identified below.

2. FAR 31.205–33(a) was later slightly altered but remains essentially the same and is located at 48 C.F.R. § 31.205–33(b) (1996).

3. The $50,000 amount subsequently was raised to $100,000.

ecution of the claim referred to in FAR 31.205–47(f).

This interpretation that the submission of a claim to the contracting officer is part of the prosecution of that claim also flows from an analysis of the applicable provisions of the CDA which the FAR is drafted to implement. The CDA describes a potential three-step procedure for the disposition of claims filed by government contractors. The first step is the contractor's submission of a claim in writing to the contracting officer. ("All claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision." 41 U.S.C. § 605(a).) The second step involves the contractor, pursuant to 41 U.S.C. § 605, securing a final decision on that claim from the contracting officer—either an actual decision on the merits of the claim or a deemed decision pursuant to Section 605(c)(5). Third, after the contracting officer issues a final decision on the claim, the contractor may seek a reversal of that decision either through an appeal to the agency board of contract appeals (Sections 606–607) or through "judicial review" in a direct action in this court (Section 609). The statutory classification of the subsequent review of the contracting officer's decision as an "appeal" or involving "judicial review" demonstrates that these three steps are part of a single integrated process for resolution of a CDA claim, and therefore that each step properly is considered part of the prosecution of that claim. Also supportive of the interpretation that submission of a claim to the contracting officer is part of claim prosecution is John Cibinic, Jr., and Ralph C. Nash, Jr., *Administration of Government Contracts* 770 (3d ed.1995), where after a review of the pertinent precedent, the authors declared that contractors cannot recover costs incurred in preparing a claim for presentation to the contracting officer. ("The cost of preparation and presentation of claims against the United States is not includable in an equitable adjustment or damages award.") Hence, for the reasons set forth above, the reference in FAR 31.205–

47(f) to "the prosecution of claims ... against the Government" covers CDA claims, and the prosecution of a CDA claim includes the contractor's submission of the claim to the contracting officer for a final decision.

Returning to the language of FAR 31.205–47(f), the bar on the recovery of costs therein extends to costs incurred "in connection with" the prosecution of claims against the government. The term "connection" is defined as "[a]n association or relationship." *Webster's II New Riverside University Dictionary* 300 (1994). Hence, the phrase "in connection with" broadens the scope of FAR 31.205–47(f) so as to encompass consulting fees that are merely associated with or related to the prosecution of a CDA claim. Therefore, applying dictionary definitions and the above analysis to the terms in FAR 31.205–47(f), consulting fees are incurred "in connection with ... the prosecution of claims" if they are incurred in association with or in relation to the submission of a CDA claim to the contracting officer.

### C.

The consulting fees R–K paid to Excell fall into two categories: (1) fees for the work Excell performed to bolster the four CDA claims plaintiff already had presented to the contracting officer,[4] and (2) fees for the work Excell performed to support demands for compensation made for the first time in plaintiff's 1990 claims, which were presented to the contracting officer after Excell had completed its work.

■ Treatment of the first category of fees is straightforward. Because plaintiff incurred these costs in an effort to convince the contracting officer to award the compensation sought in its previously submitted CDA claims, it follows that these fees must be characterized as associated with or related to the submission of CDA claims and therefore were incurred "in connection with ... the prosecution of [CDA] claims" and are not recoverable under FAR 31.205–47(f).

---

**4.** For purposes of resolving the instant cross-motions, plaintiff concedes that these four claims

qualified as CDA claims.

The second category of fees cover the work Excell performed that supported the submission of the 1990 claims. Even though Excell completed this work prior to submission of the 1990 claims, the costs R–K incurred for this work nevertheless fall within the prohibition on recovery in FAR 31.205–47(f). As explained above, the plain meaning of FAR 31.205–47(f) brings within its scope consulting fees merely associated with or related to the submission of a CDA claim. Hence, even costs incurred prior to the submission of a claim are unrecoverable under FAR 31.205–47(f) if they were associated with or related to the submission of that claim. Therefore, in applying FAR 31.205–47(f), the crucial issue is not the timing of the consulting work but rather the function for which the consulting work was performed. Further supporting this focus on the function rather than the timing of the consulting work is the definition of "costs" contained in FAR 31.205–47(a), which includes costs directly related to administrative proceedings even though the costs were incurred prior to such proceedings, *i.e.*, costs including, *inter alia*, consultant costs "and any similar costs incurred *before, during, and after* commencement of a judicial or administrative proceeding which bears a direct relationship to the proceedings" (emphasis added).

Herein, plaintiff did not present the results of Excell's work to the contracting officer or otherwise use those results in negotiations with the government prior to submitting its 1990 claims. Rather, in its interactions with the government, plaintiff used Excell's work product for the first time when it submitted its 1990 claims. Because the sole pertinent function served by Excell's consulting services with respect to the 1990 claims was to form the basis for and to support the filing of those claims, Excell's work reasonably must be classified as associated with or related to the prosecution of those claims. Stated in another way, R–K incurred the consulting fees in the "preparation and presentation of"

the 1990 claims and hence, those fees are not recoverable. *See* Cibinic and Nash, *supra*, at 770. Thus, none of the fees R–K paid to Excell is recoverable under FAR 31.205–47(f) because all of these fees were incurred "in connection with ... the prosecution of [CDA] claims."

## IV.

Plaintiff rests its argument for a contrary interpretation of the phrase "in connection with ... the prosecution of [CDA] claims" primarily on *Bill Strong Enterprises, Inc. v. Shannon*, 49 F.3d 1541 (Fed.Cir.1995), *overruled by Reflectone, Inc. v. Dalton*, 60 F.3d 1572, 1579 (Fed.Cir.1995) (en banc). There are many factual similarities between *Strong* and the instant case. Coincidentally, *Strong* also involved the recoverability of consulting fees paid by a government contractor to Excell. In *Strong*, as in the instant case, the contractor hired Excell to address inadequacies identified by the contracting officer in reviewing a document entitled "claim." Excell's work therein formed the basis for a revised claim entitled "Request for Equitable Adjustment."

The *Strong* court held that under FAR 31.205–33(d) (1987), which in pertinent part is the predecessor to FAR 31.205–47(f),[5] the contractor was entitled to recover the consulting fees for the work Excell performed to support the "Request for Equitable Adjustment." The court identified three categories of consulting fees: "(1) costs incurred in connection with the work performance of a contract; (2) costs incurred in connection with the administration of a contract; and (3) costs incurred in connection with the prosecution of a CDA claim." *Id.* at 1549. The court then concluded that the consulting fees were recoverable because the contractor incurred these fees as part of contract administration and not "in connection with the prosecution of a CDA claim." *Id.* at 1551.

---

5. FAR 31.205–33(d) (1987) provided in part: "Costs of legal, accounting, and consultant services and directly associated costs incurred in connection with ... the prosecution of claims or appeals against the Government (see 33.201) are unallowable." FAR 31.205–33(d) was deleted from the FAR effective April 17, 1989. At that

time, FAR 31.205–33(a) was revised and FAR 31.205–47(f) was added to the FAR. *See* Fed. Reg. 13,022–25 (Mar. 29, 1989). Together, these changes left unaffected the FAR's prohibition on the recovery of consulting fees incurred in connection with the prosecution of claims against the government.

To understand the *Strong* court's basis for concluding that the contractor did not incur the consulting fees "in connection with the prosecution of [CDA] claims," it is necessary to place that decision in the context of the then-controlling precedent. *See Dawco Constr., Inc. v. United States*, 930 F.2d 872 (Fed.Cir.1991), *overruled by Reflectone*, 60 F.3d at 1579. In *Dawco*, the Court of Appeals for the Federal Circuit ruled that a contractor's submission of a document entitled "claim" does not constitute a valid CDA claim unless at the time of submission a dispute existed between the parties as to the contractor's entitlement to the requested funds. *Id.* at 878. Thus, under *Dawco*, before a CDA claim could be submitted, the contracting officer first would have to consider, at least to some extent, the merits of the claim and then make a determination whether to dispute the contractor's entitlement to the requested funds. Therefore, the *Dawco* court envisioned a process of negotiation and information exchange between the contractor and the contracting officer which, if a dispute resulted and no settlement was reached, could lead to the submission of a CDA claim.

Consistent with *Dawco*'s anticipation that negotiations generally would precede the submission and prosecution of a CDA claim, the *Strong* court viewed the critical factor in assessing the recoverability of consulting fees as whether the consultant's work should be characterized as facilitating negotiations or, alternatively, as supporting the prosecution of a claim filed after negotiations fail. The court explained:

> In classifying a particular cost as either a contract administration cost or a cost incidental to the prosecution of a claim, contracting officers, the Board, and courts should examine the objective reason why the contractor incurred the cost. If a contractor incurred the cost for the genuine purpose of materially furthering the negotiation process, such cost should normally be a contract administration cost allowable under FAR 31.205–33, *even if negotiation eventually fails and a CDA claim is later submitted.* On the other hand, if a contractor's underlying purpose for incurring a cost is to promote the prosecution of a

CDA claim against the Government, then such cost is unallowable under [the FAR]. *Strong,* 49 F.3d at 1550 (emphasis added) (citations omitted).

Applying this standard, the *Strong* court concluded that Excell's work was part of the process of negotiation rather than claim prosecution. The court reasoned, consistent with *Dawco,* that neither Strong's initial submission nor its revised claim based upon Excell's work constituted a CDA claim because at the time of those submissions, the contracting officer had not yet considered, much less disputed, the contractor's entitlement to the requested compensation. The court explained that "the situation [did not] ever ripen into a dispute." *Id.* Because a CDA claim did not exist at the time the parties discussed whether Excell's work product supported the contractor's entitlement to compensation under the contract, the court viewed Excell's work as part of a negotiation phase distinct from claim prosecution. The court explained:

> Since a CDA claim did not arise before [plaintiff] incurred Excell's costs, there is a strong legal presumption that the costs incurred were not incurred in connection with the prosecution of such a claim against the Government. Since [plaintiff] and the Government were consistently in a negotiation posture and since the consultant costs were incurred as part of the exchange of information, the facts demonstrate that [plaintiff] hired Excell for the purpose of promoting contract administration and that [plaintiff] incurred Excell's costs in order to further a negotiation process that benefitted the Government. Thus, as discussed above, these costs are not unallowable under FAR 31.205–33.

*Id.* at 1551.

If *Strong* were still controlling precedent with respect to what constitutes a claim, plaintiff's reliance thereon might be compelling. In the instant case, as in *Strong,* at the time Excell performed the work upon which the 1990 claims were based, the contracting officer had not yet disputed plaintiff's entitlement to the funds sought therein. Hence, under *Dawco* and its progeny, including *Strong,* the 1990 claims would not have been

CDA claims and plaintiff would not have been prosecuting CDA claims when plaintiff incurred the costs for Excell's consulting services. Rather, plaintiff would have been in the negotiation phase which preceded the existence of a dispute and consequently preceded the submission of a CDA claim. But *Dawco* and its progeny, including *Strong*, are no longer sound precedent on the issue of what constitutes a claim. In an en banc decision in *Reflectone*, 60 F.3d at 1579, the Court of Appeals for the Federal Circuit concluded that a dispute is not a prerequisite to the existence of a CDA claim and overruled *Dawco* and its progeny, including *Strong*, to the extent that they required the existence of a dispute before the submission of a CDA claim.[6] The *Reflectone* court held that the only requirements for a "claim" are found in FAR 33.201, namely "that it be (1) a written demand, (2) seeking, as a matter of right, (3) the payment of money in a sum certain." *Id.* at 1575.

This change in the requirements for a CDA claim is crucial when applying FAR 31.205–47(f) to the instant facts. Under *Dawco* and *Strong*, because plaintiff's 1990 claims would not qualify as CDA claims, plaintiff's use of Excell's work as a basis for these submissions could properly be characterized as part of the negotiation process that preceded the submission of a CDA claim. But after *Reflectone*, despite the absence of a pre-existing dispute, the 1990 claims constitute actual CDA claims and therefore the function served by Excell's work was to form the factual basis for and to support actual CDA claims. Given this conclusion, for the reasons described above in discussing the proper interpretation of FAR 31.205–47(f), it follows that plaintiff incurred the consulting costs "in connection with ... the prosecution of [CDA] claims" and hence these costs are not recoverable.

Plaintiff asks this court to focus on the benefits accruing to the government from Excell's consulting services and argues that notwithstanding *Reflectone*, these benefits demand that the consulting services be clas-sified as part of contract administration. To support this argument, plaintiff cites the following analysis in *Strong:*

In the practical environment of government contracts, the contractor and the [contracting officer] usually enter a negotiation state after the parties recognize a problem regarding the contract. The contractor and the [contracting officer] labor to settle the problem and avoid litigation. Although there is sometimes an air of adversity in the relationship between the [contracting officer] and the contractor, their efforts to resolve their differences amicably reflect a mutual desire to achieve a result acceptable to both. This negotiation process often involves requests for information by the [contracting officer] or Government auditors or both, and, inevitably, this exchange of information involves costs for the contractor. These costs are contract administration costs, which should be allowable since this negotiation process benefits the Government, regardless of whether a settlement is finally reached or whether litigation eventually occurs because the availability of the process increases the likelihood of settlement without litigation. *See* 48 C.F.R. § 33.204 (1987) ("It is the Government's policy to try to resolve all contractual issues by mutual agreement at the contracting officer's level, without litigation.") Additionally, contractors would have a greater incentive to negotiate rather than litigate if these costs of contract administration were recoverable.

*Strong,* 49 F.3d at 1549–50.

In response, first, with *Dawco* as controlling precedent, the *Strong* court had the leeway in applying FAR 31.205–47(f) to consider the benefits that flowed to the government. As described above, because under *Dawco* plaintiff had not yet submitted a CDA claim when plaintiff first presented Excell's work product to the government, the court reasonably could conclude that plaintiff incurred the consulting fees to serve a function different from promoting the prosecution of a

---

**6.** The court explained: "To the extent that *Dawco* and its progeny [including *Strong* ] have been read to also hold that, based on FAR 33.201, a 'claim' ... must already be in dispute when submitted to the [contracting officer], they are hereby overruled." *Id.*

CDA claim. After *Reflectone,* however, plaintiff's 1990 submissions constitute CDA claims and consequently, as explained above, the plain meaning of FAR 31.205–47(f) mandates that such fees for consulting services that function solely as a basis for and to support CDA claims be classified as being incurred "in connection with ... the prosecution of [CDA] claims."

Second, the seemingly bright line *Strong* paints between pre-CDA submission negotiations and prosecution of a CDA claim after negotiations have failed was based on *Dawco* and cannot logically survive *Reflectone.* As discussed above, *Dawco* and its progeny generally envisioned a process of some negotiation first, then a dispute, and then the filing of a CDA claim. After *Reflectone,* however, the filing of a CDA claim often precedes negotiations. Under the CDA, interest does not begin to accrue on the government's monetary obligations until the contractor files a CDA claim. *See* 41 U.S.C. § 611. Hence, because the existence of a CDA claim no longer is dependent upon the existence of a dispute, a contractor typically will benefit financially from filing a CDA claim as soon as possible, even before the contracting officer initially assesses the merits of the claim. Therefore, after *Reflectone,* rather than constituting a phase distinct from the prosecution of a CDA claim, the exchange of information and negotiations between the contractor and the contracting officer are a natural part of the interactions between the parties after submission of a CDA claim, *i.e.,* negotiations are a reasonably expected part of a contractor's prosecution of a CDA claim.

Third, plaintiff is incorrect to the extent it suggests that the benefits that flow to the government from consulting services that facilitate negotiations are so unambiguous as to demand an interpretation of FAR 31.205–47(f) that would result in Excell's fees being classified as reimbursable contract administration costs. *Strong* noted that instances exist where a contractor's ability to recover consulting fees would encourage negotiations and settlement rather than litigation, *i.e.,* the recoverability of consulting costs would prompt a contractor that otherwise would not have done so to hire a consultant and thereby facilitate a settlement that otherwise would not have occurred. *See Strong,* 49 F.3d at 1549–50. Such results, however, would be the atypical exception rather than the rule. A contractor would have a strong economic incentive to secure such consulting services whether or not such costs are reimbursable whenever two conditions are satisfied: (1) the contractor reasonably believes that a consultant is necessary to demonstrate entitlement to the contracting officer; and (2) the compensation to be gained is greater than the expected cost of hiring a consultant. In such instances, where the contractor does not expect to convince the contracting officer as to entitlement without the assistance of a consultant, the contractor likely would hire a consultant to avoid having to challenge any contracting officer denial through litigation before a board of contract appeals or this court. Not only is litigation typically a very expensive alternative to resolving a claim before the contracting officer, but also a contractor that could not establish entitlement before the contracting officer without a consultant likely could not prove entitlement in litigation without the assistance of a consultant. Hence, if a contractor expects that no settlement will occur without the assistance of a consultant, the contractor ordinarily would be expected to hire a consultant to assist in reaching a settlement with the contracting officer.

Thus, even in the absence of regulations allowing the recovery of consulting fees, significant economic incentives would exist for contractors to hire consultants to assist in settlement negotiations with the contracting officer. Given these incentives, the court cannot predict with any reasonable certainty that a governmental policy of allowing the recovery of such consulting fees would significantly increase the likelihood that a typical claim would settle without litigation. On the other side of the equation, a policy of allowing the recovery of such costs potentially could increase rather than decrease the total cost to the government. For example, in instances where a settlement does not occur even though the contractor hired a consultant, or where the contracting officer denies the claim and the government prevails on the

merits in litigation, a policy allowing reimbursement of such consulting fees could raise rather than lower the total cost to the government of contract performance.[7]

The above discussion should not be construed to say that it would be unsound contracting policy for the government to allow contractors to recover reasonable fees for consulting services that facilitate negotiations between the government and the contractor with respect to a CDA claim. Rather, the court's conclusion is simply that the net benefits that flow to the government from such a policy are sufficiently ambiguous so as not to demand an interpretation of FAR 31.205–47(f), notwithstanding its plain meaning, that would allow the recovery of such fees.

One last point warrants mention. This case does not raise, and hence the court need not address, a situation where a contractor employs a consultant's work product during good faith negotiations before filing a CDA claim and then, after the negotiations fail, relies upon that same work to show entitlement either at the time it submits a CDA claim or thereafter. In such a case, the consulting services not only would form a basis for and support a CDA claim, but also would facilitate pre-claim negotiations that potentially could have prevented the necessity of ever filing a CDA claim. Excell's consulting services did not serve such dual functions because prior to the submission of the 1990 claims, plaintiff did not institute negotiations based on Excell's work product and plaintiff in effect used and presented the results of Excell's work to the contracting officer for the first time contemporaneously with the presentation of its 1990 claims. As explained above, the wording of FAR 31.205–47(f) mandates that such costs are appropriately categorized as being incurred "in connection with ... the prosecution of [CDA] claims" and hence are not recoverable.

### V.

Summary judgment is warranted where there is no dispute as to any material issue of fact and the moving party is entitled to judgment as a matter of law. RCFC 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). The moving party bears the burden of demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). All inferences as to the existence of a material fact must be resolved against the moving party. *Union Carbide Corp. v. American Can Co.*, 724 F.2d 1567, 1571 (Fed.Cir.1984). There are no material facts in dispute here. Accordingly, for the reasons set forth above, defendant's cross-motion for summary judgment is granted.

### Conclusion

For the reasons set forth above, plaintiff's motion for partial summary judgment is denied and defendant's cross-motion for summary judgment is granted. The Clerk of the Court shall enter judgment dismissing plaintiff's complaint. No costs.

**IT IS SO ORDERED.**

---

To the extent that such consulting fees are not recoverable and it is reasonably foreseeable at the time of the solicitation that the contractor may need consulting services to demonstrate entitlement, contractors could account for such potential costs when deciding whether to submit a proposal *or bid and when determining how* much to bid. Therefore, it is difficult for the court to predict with any reasonable certainty the net effect on government and contractor costs that would result from a policy of allowing the recovery of consulting costs incurred in connection with the prosecution of a CDA claim.