ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeals of -- ) | |
| ) | |
| Penna Group, LLC ) | ASBCA Nos. 61640, 61641, 61642 |
| ) | 61643, 61708 |
| Under Contract No. W9126G-09-C-0014 *et al.* ) | |

APPEARANCES FOR THE APPELLANT:      Bryant S. Banes, Esq.
Sean D. Forbes, Esq.
  Neel, Hooper & Banes, P.C.
  Houston, TX

APPEARANCES FOR THE GOVERNMENT:      Michael P. Goodman, Esq.
  Engineer Chief Trial Attorney
Katharine S. Talbot, Esq.
Blake Hedgecock, Esq.
  Engineer Trial Attorneys
  U.S. Army Engineer District, Fort Worth

OPINION BY ADMINISTRATIVE JUDGE WOODROW ON GOVERNMENT'S
MOTION FOR SUMMARY JUDGMENT AND MOTIONS TO DISMISS AND
APPELLANT'S MOTION FOR LIMITED DISCOVERY

These appeals involve disputes arising out of a series of contracts between the U.S. Army Corps of Engineers (USACE or the government) and the Penna Group, LLC (Penna or appellant). The contracts involve ecosystem restoration projects at the Samuels Avenue North/South Valley Storage Site, Fort Worth Central City, Upper Trinity River, Fort Worth, Texas (TRVA Phase I and Phase II contracts; ASBCA Nos. 61640, 61641), construction of low flow gate controllers at Ray Roberts Lake, Texas (Ray Roberts contract; ASBCA Nos. 61642, 61708), and construction of a project office at Somerville Lake, Texas (Somerville contract; ASBCA No. 61643). The government filed a motion for summary judgment in ASBCA No. 61640, and motions to dismiss ASBCA Nos. 61641, 61643 for lack of jurisdiction.

On October 2, 2020, we issued an order requesting additional briefing on two issues. First, we requested briefing regarding whether the Board possesses jurisdiction to entertain ASBCA No. 61640, given that the entity that filed the underlying claim – Penna Group LLC – is different from the entity that was awarded the contract – Penna-Ambreco JV. Under our jurisprudence, the claimant must be in privity of contract with the government in order to possess standing under the Contract Disputes Act. Second, we requested briefing regarding whether the role of government counsel, Dawn-Carole Harris, Esq., as both the government's attorney of record and a potential

material fact witness, creates a potential conflict of interest. On November 5, 2020, the government filed its brief and notice of appearance, substituting Katherine S. Talbot, Esq., and Blake Hedgecock, Esq., for Ms. Harris and Ms. Jeanelle Patel, as counsel for the USACE. On November 6, 2020, appellant withdrew ASBCA No. 61640.[1]

Given appellant's decision to withdraw ASBCA No. 61640, we deny, as moot, the government's motion for summary judgment in that appeal. We also deny the government's motion to dismiss ASBCA No. 61641, because we conclude that appellant submitted a properly certified claim. We grant the government's motion to dismiss ASBCA No. 61643, because appellant did not submit a new claim; rather, appellant submitted the same claim that previously was denied from which no appeal was taken. Finally, we deny appellant's motion for limited discovery in ASBCA Nos. 61641 and 61643.

STATEMENT OF FACTS (SOF) FOR PURPOSES OF THESE MOTIONS

Unless otherwise noted, the following facts are undisputed or uncontroverted.

I. Contract No. W9126G-09-C-0014, ASBCA No. 61640

1. On February 27, 2009, the government awarded Contract No. W9126G-09-C-0014 to Penna-Ambreco, Joint Venture, for the project titled, "Phase 1 – Samuels Avenue (North) Valley Storage Site, Fort Worth Central City, Upper Trinity River, Fort Worth, Texas" (TRVA Phase I) (ASBCA No. 61640 (61640) R4, tab 4 at 2-4).[2] TRVA Phase I involved a myriad of ecosystem restoration projects at the North Valley Storage Site (61640 R4, tab 4 at 5-10). Part of the contract required appellant to establish grass for erosion control (61640 R4, tab 2 at 1, tab 4 at 9).

2. On June 29, 2015, appellant, the Penna Group LLC, submitted a claim in the amount of $8,216.53 to contracting officer (CO) June Wohlbach. Appellant alleged that the "discovery of [] hazardous waste onsite constitutes a latent defect and a failure

---

[1] In its brief, appellant further contended that Ms. Talbot and Ms. Patel should not be permitted to represent the government, speculating that they have worked with Ms. Harris as co-counsel for several years on this case and may have been involved with the administration of the contracts with Penna prior to the appeals being brought (app. br. at 4-5). However, appellant has not submitted a motion to disqualify counsel and we will not *sua sponte* act in the absence of any evidence that newly assigned government counsel possess a conflict of interest.

[2] According to a footnote in the government's June 29, 2018 motion for summary judgment, the appellant, Penna Group, LLC, is the managing member of the joint venture (gov't br. at 1).

2

to disclose, and as such, the failure of the turf to establish and the resultant erosion were beyond the Contractor's control." (61640 R4, tab 2 at 1-2). The government paid appellant's claim (61640 R4, tab 5).

3. As a condition of receipt of the payment, the government required appellant to sign a release of claims. On July 7, 2015, Penna-Ambreco JV executed a release of claims, signed by Penna-Ambreco JV (with Michael Evangelista-Ysasaga signing as the Managing Partner) and Ambreco, LTD (with Robert Dominguez, Jr. signing as Partner) (61640 R4, tab 3 at 12). The release stated that appellant "hereby releases the United States, its officers, agents, and employees from any and all claims arising under or by virtue of said Contract or any modification or change thereof." (61640 R4, tab 6) The government then paid the claim in full (61640 R4, tab 5).

4. On January 24, 2018, government counsel, Dawn-Carole Harris, Esq., sent an email to appellant's chief executive officer (CEO), Mr. Michael Evangelista-Ysasaga, with the subject line "Valley Storage, Phase I close out." The email stated, "Release of claims for both Phase I and Phase II are attached. Just scratch out the 'NONE' and write in what you want." (61640 app. supp. R4, tab 1 at 2)

5. Mr. Evangelista-Ysasaga responded to the email on February 28, 2018. His response stated, in part:

> DC, apologies for the delay. Our lawyers were working on the claims reorganization which are now finalized.
>
> Regarding TRVA Phase 1, as mentioned, we are still owed approximately $80K for having to warrant the grass which died as a result of the undisclosed hazardous waste in the soil. See attached.

(61640 app. supp. R4, tab 1 at 1) Attached to the email was a document titled "TRVA Phase 1 Warrant on Erosion," which listed the total cost as $79,593.80 (61640 app. supp. R4, tab 1 at 9-10).

6. By letter dated March 16, 2018, CO Linda Eadie[3] notified Penna-Ambreco Joint Venture that the government would not consider appellant's request for additional funds due to the government's payment of the prior claim and execution of the release (61640 R4, tab 3 at 1).

---

[3] It is the Board's understanding that CO Linda Eadie took over as the contracting officer on all of the contracts discussed in these appeals after CO June Wohlbach's apparent retirement sometime in mid-January 2018 (*See* 61641 app. supp. R4, tab 12 at 7).

7. On June 8, 2018, appellant filed a notice of appeal with the Board, which we docketed as ASBCA No. 61640. The notice of appeal stated that this was an appeal from the March 16, 2018 denial of its claim. On November 6, 2020, appellant submitted a filing stating that it "hereby withdraws ASBCA No. 61640, its appeal based on its June 29, 2015 and February 28, 2018 claims against the Government relating to Contract No. W9126G-09-C-0014. (See R4 Tab 2; R4 Tab 4)." (App. br. dtd. November 6, 2020, at 1)

## II. Contract No. W9126G-10-C-0009; ASBCA No. 61641

8. On January 25, 2010, the government awarded Contract No. W9126G-10-C-0009 to appellant for the project titled, "Phase 2 – Samuels Avenue North/South Valley Storage Site, Fort Worth Central City, Upper Trinity River, Fort Worth, Texas" (TRVA Phase II) (61641 app. supp. R4, tab 13 at 1-3). Similar to TRVA Phase I, TRVA Phase II involved ecosystem restoration projects at the North and South Valley Storage Sites (61641 app. supp. R4, tab 13 at 3-9).

9. On June 18, 2015, Mr. Evangelista-Ysasaga submitted via email a document purporting to be a Request for Equitable Adjustment (REA) to CO Wohlbach (61641 R4, tab 5 at 2-4; 61641 app. supp. R4, tab 1). The REA requested a total sum certain amount of $1,439,224.03 (61641 app. supp. R4, tab 1 at 35). Mr. Evangelista-Ysasaga certified the REA under the Defense Federal Acquisition Regulation Supplement (DFARS) 252.243-7002, REQUESTS FOR EQUITABLE ADJUSTMENT. The certification stated, "I certify that the request is made in good faith, and that the supporting data are accurate and complete to the best of my knowledge and belief." (61641 R4, tab 5 at 3; 61641 app. supp. R4, tab 1 at 35) The REA also requested a Contracting Officer's Final Decision (COFD). It stated:

> [P]lease consider this correspondence our Certified Request for Equitable Restitution [] and Formal Request for Contracting Officer's Final Decision [] under FAR 33.221(c)(2). If a Final Decision cannot be reached within the prescribed 60 days under FAR 33.221(c)(2) [sic], after receiving this certified REA, please provide notification within that 60-day period of time within which a decision will be issued as mandated under this clause.

(61641 R4, tab 5 at 3; 61641 app. supp. R4, tab 1 at 1)

10. The same day, Ms. Harris replied to the email requesting clarification as to whether appellant intended the action to be an REA or a Contract Disputes Act (CDA) claim. Ms. Harris wrote:

4

> The certification you have provided is consistent with DFARS 252.243-7004. That would classify the action as a request for equitable adjustment (REA). You are also requesting a Contracting Officer's Final Decision under "FAR 33.221(c)(2)" (I am assuming you are referring to 33.211(c)). Contracts Disputes Act (CDA) claims are covered in Part 33 of the FAR.
>
> . . .
>
> Because the correspondence does not contain the required certification for a CDA claim, the Government will process this action as an REA.
>
> If you wish to have this action processed as a CDA claim under FAR Part 33, you will need to provide the appropriate certification.

(61641 R4, tab 5 at 1-2)

11. Later that day, Mr. Evangelista-Ysasaga replied via email, stating that he intended the submission to be an REA. Mr. Evangelista-Ysasaga wrote, "Yes, we are aware of the distinction between a Claim and an REA. Our selection to proceed with an REA was deliberate." (61641 R4, tab 5 at 1)

12. Appellant submitted amendments to its REA on July 6, 2015 and August 17, 2015 (61641 R4, tabs 7-8). Appellant provided two additional amendments on December 1, 2015 (61641 R4, tabs 10-11). Mr. Evangelista-Ysasaga certified each of the REA amendments using the same DFARS certification language found in the initial REA (61641 R4, tab 7 at 2, tab 8 at 2, tab 10 at 10, tab 11 at 2).

13. On July 12, 2016, CO Wohlbach provided a written response to the REA and its amendments. CO Wohlbach's response letter stated, in part:

> This does not constitute a final contracting officer's decision nor denies your right to resubmit a request for equitable adjustment under DFAR Clause 252.243-7002, Requests for Equitable Adjustments, or pursue a dispute under FAR clause 52.233-1, Disputes. Please ensure if

5

either option is pursued that all requirements of the
appropriate clause are followed.

(61641 R4, tab 12 at 5)

14.  On October 11, 2017, appellant submitted an additional amendment to its
REA (61641 R4, tab 9).  Again, Mr. Evangelista-Ysasaga certified the submission with
the same DFARS certification language found in the initial REA (61641 R4, tab 9 at 13).

15.  On February 28, 2018, Mr. Evangelista-Ysasaga sent Ms. Harris a series of
emails pertaining to appellant's various contracts; one of which was in reference to the
TRVA Phase II contract (61641 R4, tab 14 at 1-2).  The TRVA Phase II email stated,
"DC, as mentioned, we would like [to] meet to negotiate this claim.  See attached
Contractor Estimate of Costs" (61641 R4, tab 2 at 1).  Attached to the email was a
document titled "Contractor Estimate of Costs (Original vs. Completion)," which
listed a total claimed amount of $2,420,317.53 (61641 R4, tab 2 at 3-56).

16.  That same day, Ms. Harris responded via email stating, "I'm not sure what
the Valley Storage 1 and 2 emails are; REAs, claims or just additional information to
supplement existing REAs.  Could you please clarify for me?"  (61641 R4, tab 14 at 2)

17.  On March 6, 2018, appellant's counsel responded to Ms. Harris' email.
Appellant's counsel wrote, "The additional emails on [TRVA] are mainly revised
calculations of damages on the existing [TRVA] claim, dated June 18, 2015."
(61641 R4, tab 14 at 1)

18.  On March 28, 2018, CO Eadie provided a written response to appellant.
CO Eadie's response letter stated, in part:

> I have completed a review of our file for the REA that
> Penna Group submitted on W9126G-10-C-0009, TRVA
> Phase 2.
>
> . . .
>
> It is the Government's position that all issues associated
> with the June 18, 2015 REA, and supplements, have been
> addressed, the Government will not be reopening
> negotiations in this matter.

(61641 R4, tab 3 at 1-2)

6

19.  On April 3, 2018, Mr. Evangelista-Ysasaga signed an affidavit regarding appellant's various government contracts (61641 app. supp. R4, tab 12 at 7-11).  The affidavit describes a December 7, 2017 meeting with government counsel, Ms. Harris.  The affidavit alleges:

> At that meeting, Ms. Harris stated that she expected Penna Group's claim to be settled after Ms. Wohlbach retired in mid-January 2018.  Ms. Harris emphasized that the delay was for the government's convenience and stated that Ms. Wohlbach's absence would help facilitate a settlement of all claims, namely those for TRVA, Sommerville, and Ray Roberts.  She told me that USACE had certain pots of money and asked that the claims be revised in part to trigger the types of claims that covered those areas, such as loss of productivity.  We complied and resubmitted the information requested after Ms. Wohlbach left, as Ms. Harris had asked.  Ms. Harris also assured us that all pending claims would be fully and fairly considered.

(61641 app. supp. R4, tab 12 at 7, ¶ 4)[4]

20.  Paragraph 23 of the affidavit states, "Although never specially raised in a timely fashion as required by 41 USC 7103(b)(3), I recertify all of the pending claims for in Paragraph 13 above, namely Sommerville ($465,950.55), Ray Roberts ($175,799) and TRVA ($2,100,37.53) as follows."  The affidavit then provided the CDA's claim certification language.  (61641 app. supp. R4, tab 12 at 10)  Paragraph 13 of the affidavit included "TRVA Phase 2, Contract No. W9126G-09-C-0014 [sic]" (61641 app. supp. R4, tab 12 at 8).  Appellant provided a copy of the affidavit to the government that same day (61641 app. supp. R4, tab 12 at 1).

21.  On September 27, 2018, Mr. Evangelista-Ysasaga signed a supplemental affidavit in which he provided, "In paragraphs 13 and 23 of this affidavit, while I correctly refer to what everyone knows in this appeal is 'TRVA 2,' the contract number is a typo.  Instead, the contract number for TRVA 2 is Contract No. W9126G-10-C-0009, and I make that correction here."  (App. sur reply, ex. 2 at 2)

---

[4] The government does not explicitly confirm or deny whether this meeting occurred, noting in its reply "Government's counsel then allegedly stated that she believed Appellant should wait and settle its pending claims with the new contracting officer.  The alleged enlightenment of Government counsel is not a special circumstance that would vitiate the release."  (Gov't reply br. at 7)

7

22. On June 8, 2018, appellant filed a notice of appeal with the Board, which we docketed as ASBCA No. 61641. The notice of appeal stated that this was an appeal from the CO's March 28, 2018 refusal to issue a final decision on its claim.

### III. Contract No. W9126G-10-C-0079; ASBCA No. 61643

23. On July 30, 2010, the government awarded Contract No. W9126G-10-C-0079 to appellant for the design and construction of an office at Somerville Lake, Texas (Somerville) (61643) R4, tab 4 at 1-4).

24. By letter dated July 8, 2012, appellant submitted an REA to CO Wohlbach (61643 R4, tab 5 at 2-19). The REA requested a contracting officer's determination regarding the assessment of liquidated damages and sought equitable restitution for various government caused delays (61643 R4, tab 5 at 2-19). On January 2, 2013, CO Wohlbach sent appellant an email with "questions/clarifications" regarding appellant's REA (61643 R4, tab 6 at 932). Appellant responded, by letter dated May 2, 2013, with answers to CO Wohlbach's questions/clarifications (61643 R4, tab 6 at 38-52). CO Wohlbach denied appellant's REA on December 13, 2013 (61643 app. supp. R4, tab 23 at 1).

25. By letter dated March 13, 2014, appellant requested that the government convert the previously submitted REA into a claim. The letter stated, "The Penna Group, LLC [] hereby formally requests that the Government [] convert the previously submitted REA . . . into a 'Claim.'" (61643 R4, tab 5 at 1). Accompanying the letter was a claim certification document, signed and dated March 3, 2014 (61643 R4, tab 5 at 20).

26. By letter dated December 5, 2014, CO Wohlbach issued a COFD on appellant's claim (61643 R4, tab 6 at 1-37). The COFD noted that appellant's "May 2, 2013 response [] shall be considered the 'Claim' document. The May 2, 2013 document contains the entire July 8, 2012 . . . (REA), plus additional information and documents" (61643 R4, tab 6 at 2).

27. The COFD found partial merit to the claim, determining that appellant was entitled to $52,239.99. In reaching this figure, the COFD noted that the government withheld $5,055.20 for Davis-Bacon labor violations. (61643 R4, tab 6 at 36-37) The COFD also stated:

> The proceeds from this Contract are subject to a tripartite agreement between the Government, Penna and the surety (SureTec). Pursuant to that agreement, SureTec is to receive all remaining funds (except the $5055.20 withheld for labor violations) under this Contract. Further, due to the IRS levy, SureTec has filed a stakeholder appeal with

8

the ASBCA (ASBCA No. 59657) seeking to enforce the tripartite agreement against the Government.

**No proceeds shall be disbursed until a decision has been rendered in ASBCA No. 59657.**[5]

(61643 R4, tab 6 at 37) (emphasis in original)

28. Appellant acknowledged receipt of the COFD via email on December 5, 2014 (61643 R4, tab 3 at 105).

29. By letter dated February 28, 2018, appellant submitted a certified claim requesting a contracting officer's final decision. Appellant's letter stated, "We are submitting our prior request for equitable adjustment, dated July 8, 2012 ('REA-1') and May 2, 2013 ('REA-2'), as a certified claim. In reviewing the government's December 13, 2013 letter responding to the REA, we note that it is rife with errors and misstatements." The claimed amount was $465,950.55. The letter did not reference CO Wohlbach's December 5, 2014 COFD. (61643 R4, tab 2 at 1-17)

30. By letter dated March 19, 2018, CO Eadie issued a response to appellant's February 28, 2018 claim. The response letter stated:

> On December 5, 2014, a Contracting Officer's Final Decision (COFD) was issued. [] The COFD was sent to you via e-mail on December 5, 2014 and you acknowledged receipt on that same day. []
>
> Pursuant to 41 U.S.C. § 606, the time for appeal of the contracting officer's final decision has passed. Accordingly, I decline to consider this matter further.

(61643 R4, tab 3 at 1)

31. On June 8, 2018, appellant filed a notice of appeal with the Board, which we docketed as ASBCA No. 61643. The notice of appeal stated that this was an appeal from the CO's March 19, 2018 denial of its claim.

---

[5] The COFD incorrectly identifies ASBCA No. 59657 as the relevant appeal; the correct appeal is ASBCA No. 59647.

DECISION

I. Motion for Summary Judgment; ASBCA No. 61640

The government moves for summary judgment in ASBCA No. 61640, arguing that appellant's claim is barred by the parties' execution of an unconditional release and final payment (gov't mot. at 2-3). Because appellant voluntarily has withdrawn its appeal in ASBCA No. 61640 (SOF ¶ 7), we deny the government's motion for summary judgment as moot.

II. Motion to Dismiss for Lack of Jurisdiction; ASBCA No. 61641

The government moves to dismiss ASBCA No. 61641, arguing that appellant never requested that its June 18, 2015 submission be converted into a claim and never provided a CDA claim certification (gov't mot. at 3). The government stresses that Mr. Evangelista-Ysasaga's email stated that he was aware of the distinction between a claim and REA, and that his selection to proceed with an REA was deliberate (gov't mot. at 3; SOF ¶ 11). The government states that to convert an REA into a claim generally requires requesting a COFD and certification of the claim, which appellant allegedly failed to do (gov't reply br. at 6).

Appellant maintains that it did provide a CDA claim certification, that any defect in the certification is correctable, and that the totality of the circumstances shows that it submitted a claim (app. resp. at 7). We conclude that appellant's initial submission constituted a claim, because it was a non-routine request for a sum certain, contained a certification, and expressly included a request for a final decision. Moreover, any doubt concerning whether the submission was a claim was eliminated when appellant submitted an affidavit referencing the claim and containing the correct CDA certification language.

An REA is a request from a contractor to a CO to consider adjusting contract terms. In certain circumstances, contractors prefer to pursue REAs prior to submitting CDA claims so as to preserve the relationship of the parties during contract performance, or because they may receive compensation for the work required to prepare an REA. *See generally, Bill Strong Enterprises, Inc. v. Shannon*, 49 F.3d 1541 (Fed. Cir. 1995) (overruled in part on other grounds, *Reflectone, Inc. v. Dalton*, 60 F.3d 1572, 1579, n.10 (Fed. Cir. 1995)). The CDA does not define an REA.

Although the CDA does not define "claim" either, the Federal Circuit has held that we must look to the FAR for its definition. *See, e.g., H.L. Smith, Inc. v. Dalton*, 49 F.3d 1563, 1564-65 (Fed. Cir. 1995). FAR 2.101 provides that a claim is "a written demand or written assertion by one of the contracting parties seeking, as a matter of

right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or related to the contract."

The CDA provides that "[e]ach claim by a contractor against the Federal Government relating to a contract shall be submitted to the contracting officer for a decision." 41 U.S.C. § 7103(a)(1). Consequently, a contractor must request a final decision in order to submit a proper claim. *Hejran Hejrat Co. v. United States Army Corps of Engineers*, 930 F.3d 1354, 1356 (Fed. Cir. 2019) (citing *M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1327 (Fed. Cir. 2010).

The record demonstrates that appellant's June 18, 2015 submission did request a COFD. The second paragraph states, "please consider this correspondence our Certified Request for Equitable Restitution [] and Formal Request for Contracting Officer's Final Decision [] under FAR 33.221(c)(2). If a Final Decision cannot be reached within the prescribed 60 days under FAR 33.221(c)(2), after receiving this certified REA, please provide notification within that 60-day period of the time within which a decision will be issued as mandated under this clause." (SOF ¶ 9)[6] This language unmistakably requests a COFD.

The government maintains that appellant's request for a COFD is inconsequential because Mr. Evangelista-Ysasaga' s subsequent email clarified that he intended the submission to be an REA, and not a CDA claim (gov't mot. at 3; SOF ¶ 11).

As an initial matter, we agree with the government that appellant initially intended its June 18, 2015 submission to be an REA, based upon appellant's email response on the same day to Ms. Harris' question of whether the document was a CDA claim or REA. Appellant stated: "Yes, we are aware of the distinction between a Claim and an REA. Our selection to proceed with an REA was deliberate." (SOF ¶ 11) We take appellant at its word that it intended the June 18, 2015 submission to be a REA and not a claim. *See Hejran* at 1358 (A party in a dispute cannot retroactively reach back in time and re-characterize a document to their benefit; "The contracting officer could not retroactively turn a qualifying claim document into something else.")

However, despite the appellant's expressed intent to treat its June 18, 2015 submission as an REA and not a claim, the fact that appellant unequivocally requested a contracting officer's final decision squarely classifies appellant's submission as a claim. As we recently discussed in *BAE Systems*, the distinction between an REA and a claim often comes down to whether the contractor has requested a final decision

---

[6] Appellant's reference to "FAR 33.221(c)(2)" appears to be an oversight. Appellant likely intended to reference FAR 33.211(c)(2), as recognized in Ms. Harris' reply email (SOF ¶ 10).

from the CO. *BAE Systems Ordnance Systems*, *Inc.*, ASBCA No. 62416, 21-1 BCA ¶ 37,800 at 183,577. Citing *Reflectone*, we noted that even a document referring to itself as an REA often meets the definition of a claim in that it makes a non- routine written demand for payment as a matter of right. *Id.* at 176,424-25 (citing *Reflectone*, 60 F.3d at 1577). Hence, in *Hejran Hejrat*, the communication with the CO was styled as an REA and the contractor disavowed any intention of submitting a claim, but the Federal Circuit nevertheless held that the document met the FAR's definition of a claim. 930 F.3d at 1357-58.

This appeal is distinct from our recent decision in *BAE Systems*, in which we found that the contractor's submissions constituted REAs and not claims. 21-1 BCA ¶ 37,800 at 183,579. The key difference between *BAE Systems* and this appeal is that BAE assiduously avoided asking for a final decision, whereas Penna asked for a final decision on its REA in the first instance.

Appellant's June 18, 2015 submission contains all the hallmarks of a CDA claim. It is a written demand for payment, seeking a sum certain amount and final decision. The only question left for consideration is whether it was properly certified.

A. Whether appellant's claim was properly certified

Appellant's June 18, 2015 submission requested a total sum certain amount of $1,439,224.03 (SOF ¶ 9), and, therefore, was required to be certified. The document contained certification language that stated, "I certify that the request is made in good faith, and that the supporting data are accurate and complete to the best of my knowledge and belief" (SOF ¶ 9). It also stated that it was being certified under DFARS 252.243-7002 (SOF ¶ 9), which is the certification section applicable to REAs.

In *BAE Systems*, we clarified that the form of the certification is not dispositive. *BAE Systems Ordnance Systems*, *Inc.*, ASBCA No. 62416, 21-1 BCA ¶ 37,800 at 183,578. The CDA requires that all claims over $100,000 in value be certified in accordance with 41 U.S.C. §7103(b). *Special Operative Grp.*, *LLC*, ASBCA No. 57678, 11-2 BCA ¶34,860 at 171,480 (citation omitted). The DFARs include a special certification to be used for REAs that does not include all of the statements required for certification of claims by the CDA's statutory language. Compare DFAR 252.243-7002 (the DFARs REA certification provision) to 41 U.S.C. §7103(b). In *Air Services*, *Inc.*, ASBCA No. 59843, 15-1 BCA ¶ 36,146 at 176,427, we recognized that the DFARS REA certification makes both the first and second attestations required by 41 U.S.C. § 7103(b)(1). Furthermore, we held that including the DFARS REA certification is correctible under 41 U.S.C. § 7103(b)(3). *Id.* Likewise, the REA in *Hejran Hejrat*, which the Federal Circuit held to constitute a CDA claim, used the DFARs-prescribed REA certification language. *See Hejran Hejrat Co.*, ASBCA No. 61234, 18-1 BCA ¶37,039 at 180,322-23. Appellant's certification of its June 18, 2015 submission,

12

while "defective," thus requiring later correction, is, nevertheless, sufficient to qualify the submission as a claim.

The defective certification, in fact, was remedied three years later. On April 3, 2018, appellant submitted an affidavit to the CO referencing many of the ongoing disputes, including the REA that was the subject of appellant's June 18, 2015 submission. (SOF ¶¶ 29-30) This affidavit is important, because it references the parties' impasse in negotiations and expressly states that appellant recertifies all pending claims. It also included a signed CDA certification pursuant to 41 USC ¶ 7103(b)(1). (SOF ¶ 30)

The government argues that this is a defective certification, and possibly a false claim. The government notes that the contract number referenced in paragraph 13 of the affidavit did not list the contract number for TRVA Phase 2, but rather the contract number for TRVA Phase 1. (Gov't reply br. at 8-9) The relevant language from paragraph 13 says "(1) TRVA Phase 2, Contract No. W9126G-09-C-0014" (SOF ¶ 20). It is clear to us that the incorrect contract number listed in paragraph 13 of the affidavit was an oversight. This oversight was corrected via a supplemental affidavit, dated September 27, 2018, which amends the contract number to Contract No. W9126G-10-C-0009 (SOF ¶ 21).

With regard to the False Claims Act, 31 U.S.C. §§ 3729-33, the government alleges that at the time Mr. Evangelista-Ysasaga signed the affidavit, he knew that appellant already had been paid for certain work that was part of its June 18, 2015 REA. The government argues that the affidavit did not distinguish between those matters that had been settled and the issues that remain unsettled, but rather certified the entire REA and all amendments and is thereby requesting payment for matters already settled (gov't reply br. at 8). The government surmises that this may be a violation of the False Claims Act.

We are not convinced that Mr. Evangelista-Ysasaga's affidavit raises any jurisdictional issues under the False Claims Act. The relevant portion of the affidavit cited by the government states, "I recertify all of the pending claims for in Paragraph 13 above" (gov't reply br. at 8; SOF ¶ 20). We note that the affidavit only certifies appellant's "pending" claims. Certainly, any matter that was previously settled by the parties (*see e.g.* gov't reply br., ex. N), would not be considered part of a pending claim. It should also be relatively easy to identify these matters if the parties have a properly executed modification (*see e.g.* gov't reply br., ex. N).

In our view, appellant's affidavit eliminates any ambiguity about whether its claim was properly certified, and taken together with the detailed submissions during the course of negotiations, constitutes a properly certified CDA claim over which we

13

possess jurisdiction. Accordingly, we deny the government's motion to dismiss ASBCA No. 61641 for lack of jurisdiction.

### III. Motion to Dismiss for Lack of Jurisdiction; ASBCA No. 61643

The government moves to dismiss ASBCA No. 61643 for lack of jurisdiction, arguing that appellant's February 2018 claim is merely a resubmittal of its March 2014 claim. The government stresses that in December 2014, the CO issued a final decision on the March 2014 claim, from which no appeal was filed. The government argues that appellant should not be permitted to escape the consequences of failing to appeal the COFD simply by resubmitting the same claim. (Gov't mot. at 3)

Appellant makes two primary arguments asserting the Board's jurisdiction. First, appellant maintains that its February 2018 claim contained new language and new facts that did not appear in its prior claim and were not addressed in the COFD (app. resp. at 2-3). Second, appellant argues that the COFD was not final, but rather "contingent on both: (1) the decision by this Board in ASBCA No. 59657 (sic)[7]; and (2) the outcome of a labor investigation" (app. resp. at 4).

### A. Comparison of March 2014 and February 2018 Claims

Appellant bears the burden of proving the Board's subject matter jurisdiction by a preponderance of the evidence. *Colonna's Shipyard*, *Inc.*, ASBCA No. 59987 *et al.*, 16-1 BCA ¶ 36,518 at 177,900. The CDA provides that "[t]he contracting officer's decision on a claim is final and conclusive and is not subject to review by any forum, tribunal, or Federal Government agency, unless an appeal or action is timely commenced as authorized by this chapter." 41 U.S.C. ¶ 7103(g). In order for the Board to possess jurisdiction over an appeal, a contractor's notice of appeal must be mailed or otherwise furnished to the Board within 90 days from the date of receipt of the final decision. 41 U.S.C. ¶ 7104(a); s*ee Cosmic Constr. Co. v. United States*, 697 F.2d 1389 (Fed. Cir. 1982) (90 day filing requirement is statutory and cannot be waived by the Board).

Appellant's first claim is dated March 13, 2014 (SOF ¶ 25). On December 5, 2014, the CO issued a final decision on the claim (SOF ¶ 26). Appellant acknowledged receipt of the COFD on December 5, 2014 (SOF ¶ 28). Appellant never submitted an appeal of the December 5, 2014 COFD. By letter dated February 28, 2018, appellant submitted another claim (SOF ¶ 29). Appellant filed the current appeal based on the deemed denial of its February 28, 2018 claim (SOF ¶ 31).

---

[7] The correct appeal number is ASBCA No. 59647.

If appellant's February 2018 claim is the same claim that was previously submitted and decided by the CO, then we would lack jurisdiction. *See SMS Agoura Sys., Inc.*, ASBCA No. 50878 *et al.*, 97-2 BCA ¶ 29,321 (dismissing appeal for lack of jurisdiction where appellant's claims were the same claims previously denied by the CO, from which no appeal was filed). Therefore, we must determine whether the February 2018 claim constitutes a new claim or is the same claim that was previously submitted and decided.

We have recognized that "[t]he introduction of additional facts which do not alter the nature of the original claim . . . or the assertion of a new legal theory of recovery, when based upon the same operative facts as included in the original claim, do not constitute new claims." *Trepte Constr. Co.*, ASBCA No. 38555, 90-1 BCA ¶ 22,595 at 113,385-86.

Appellant cites the entirety of the opening paragraph to the February 2018 claim as one of the primary sources of new language that did not appear in its prior claim (app. resp. at 2). The opening paragraph begins by stating, "We are submitting our prior request for equitable adjustment, dated July 8, 2012 [] and May 2, 2013 [], as a certified claim" (SOF ¶ 29). This language is notably similar to appellant's March 13, 2014 claim, which begins by stating "[t]he Penna Group, LLC [] hereby formally requests that the Government [] convert the previously submitted REA . . . into a 'Claim'" (SOF ¶ 25). In short, both the March 2014 and February 2018 claims requested that the government convert the same REA into a claim.

The opening paragraph goes on to state, "In reviewing the government's December 13, 2013 letter responding to the REA, we note that it is rife with errors and misstatements" (SOF ¶ 29). Here, we note that while the opening paragraph refers to the December 13, 2013 REA denial (SOF ¶ 24), it makes no reference to the December 5, 2014 COFD. In fact, there is no reference to the December 5, 2014 COFD anywhere in the February 2018 claim (SOF ¶ 29).

The remainder of the opening paragraph briefly describes the bases of the claim. Review of the language shows references to a differing site condition, government caused delay, extended nonpayment, and over inspection in retaliation for raising hazardous waste issues on the TRVA contract. It states that this all resulted in delay labor costs of $465,950.55. For purposes of our inquiry, the most noteworthy aspect of this language is that each of the bases identified in the opening paragraph are discussed with reference to specific factual allegations in the remainder of the claim. This is important because the overwhelming majority of the rest of the claim - that is, aside from the language in the opening paragraph - is recreated nearly verbatim from the March 2014 claim.

15

The content of the February 2018 claim and the March 2014 claim are remarkably similar. Indeed, the entirety of the language from appellant's July 8, 2012 and May 2, 2013 REA submissions is included in the February 2018 claim. Again, this is the exact same language that was included in the March 2014 claim.

Nevertheless, appellant argues that it included new language throughout the February 2018 claim, which makes it a new claim (app. resp. at 2). Appellant states that the new language adds claims what were not addressed in any COFD (app. resp. at 2). Review of the claim confirms the presence of some new language. For example, in the main body of the claim, where appellant specifically details the various bases for its claim, there are several paragraphs that contain one to two additional sentences at the end of the paragraph that cannot be found in appellant's prior submissions. These additional sentences appear to be appellant's responses to the government's December 13, 2013 REA denial as the language consistently refers to appellant's opposition to the government's position. As noted above, appellant's opening paragraph stressed that the December 13, 2013 REA denial was "rife with errors and misstatements" (SOF ¶ 29). Crucially, however, none of this language contain new operative facts that were not part of appellant's earlier claim. Instead, the new sentences read more like appellant's commentary disagreeing with the CO's position.

After a thorough review of the March 2014 and February 2018 claims, we conclude that, while there is some new language included in the February 2018 claim, the new language did not contain any new operative factual allegations. Moreover, to the extent that the language raises new legal bases, they are all based on the same operative facts as included in the original claim. Therefore, the February 2018 submission is not a new claim.

## B. Whether the December 2014 COFD was contingent

Appellant also argues that the December 2014 COFD was not actually final. Appellant states that it was in fact contingent on the Board's decision in ASBCA No. 59657 and the outcome of a labor investigation. (App. resp. at 4)

## I. Ancillary Board Decision

Appellant maintains that the December 2014 COFD was contingent on the Board's decision in ASBCA No. 59657, which is an unrelated appeal having nothing to do with appellant or this appeal (app. resp. at 4). The government argues that the finality of the decision was not contingent on any other Board decision, but rather that the payment on the claim was contingent on the decision (gov't reply at 2).

The December 2014 COFD stated that no proceeds would disbursed until a decision has been rendered in a stakeholder appeal involving appellant's surety,

SureTec (SOF ¶ 27). While the COFD stated that the applicable appeal number was ASBCA No. 59657 (SOF ¶ 27), the correct appeal number was ASBCA No. 59647.

We view the reference to ASBCA No. 59657, instead of ASBCA No. 59647, to be a typographical error. We believe that the COFD described the appeal in sufficient detail that appellant could have identified the correct appeal number (*see* SOF ¶ 27). We also note that appellant makes no assertion that it actually relied on the inclusion of the erroneous appeal number during the December 2014 COFD appeal period.

Furthermore, appellant's argument that the finality of the COFD is somehow contingent on the outcome of the Board's decision in either ASBCA No. 59657 or 59647 is not supported by the language in the COFD. The CO's conclusions regarding the merits of appellant's claim are not held open in the COFD. Rather, the COFD thoroughly analyzed the claim, finding partial merit to it and denying the remainder (*see* SOF ¶ 27). There is no language included stating that the CO would reconsider her conclusions. The language emphasized by appellant merely puts appellant on notice that the payment amount it should expect to receive will depend on the outcome of this ancillary appeal. It takes nothing away from the finality of the decision itself.

II. Labor Investigation

Additionally, appellant maintains that the COFD was not final because of an alleged ongoing labor investigation (app. resp. at 4). Appellant's argument is apparently in reference to the portion of the COFD that withheld $5,055.20 for Davis-Bacon labor violations (SOF ¶ 27).

The COFD does not mention any pending labor investigation, nor does it purport to make any findings concerning any alleged labor violations. Instead, the COFD simply notes that $5,055.20 of the contractor's final payment "is being withheld for Davis-Bacon violations (nonsubmittal of payrolls)." (SOF ¶ 27) The government is entitled to withhold these funds pursuant to provisions of the Davis-Bacon Act. *See*, *e.g.*, 42 U.S.C. § 3142(c)(3) (pertaining to wage rate violations) and 42 U.S.C. § 3702(d) (pertaining to overtime violations). The contracting agency's decision to withhold unpaid wages has no effect on the finality of the contracting officer's final decision, but merely provides notice to the contractor that the government was withholding a portion of the final payment pursuant to the Davis-Bacon Act.

Moreover, nothing in the COFD indicates that it is contingent on the findings of a pending labor investigation. Appellant's reliance on *Wilson*, ASBCA No. 47831, 97-1 BCA ¶ 28911, is misplaced. *Wilson* addressed a situation where the CO elected to reconsider his decision within the time allowed by the CDA for the appeal of the decision, thereby preventing the decision from becoming final. Here, the CO did not

withdraw or reconsider her decision, but expressly stated that her decision was final (SOF ¶ 27).

Accordingly, we grant the government's motion to dismiss ASBCA No. 61643 for lack of jurisdiction.

III. Appellant's Motion for Limited Discovery in ASBCA Nos. 61640, 61641, 61643

Lastly, appellant has filed motions for limited discovery in ASBCA Nos. 61640, 61641, 61643. With regard to ASBCA No. 61640, appellant argues that it needs limited discovery to identify material facts essential to its opposition to the government's motion for summary judgment (app. mot. at 4-8). We view this motion as moot given that we have already denied the government's motion for summary judgment because material facts are in dispute.

With respect to the government's motions to dismiss for lack of jurisdiction in ASBCA Nos. 61641, 61643, appellant states that the government has relied on evidence outside the pleadings, thereby necessitating their conversion to motions for summary judgment. As such, appellant says it needs limited discovery to show genuine issues of material fact. (App. mot. at 4-8)

Under certain circumstances, the Board will convert a motion to dismiss into a motion for summary judgment. It is the Board's practice to convert a motion to dismiss for failure to state a claim upon which relief can be granted or a motion for judgment on the pleadings to a motion for summary judgment if we need to consider matters outside of the claim and the complaint to decide them. *See*, *e.g.*, *Third Coast Fresh Distrib.*, *LLC*, ASBCA No. 59696, 16-1 BCA ¶ 36,340; *Precision Standard, Inc.*, ASBCA No. 54027, 03-2 BCA ¶ 32,265; *see also* FED. R. CIV. P. 12(d). That is not the case for a motion to dismiss for lack of jurisdiction, for which consideration of evidence outside of the pleadings is routine and permissible when jurisdictional facts are disputed. *See*, *e.g.*, *Reynolds v. Army and Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed. Cir. 1988). In any event, there is no basis to convert the government's motions to dismiss into motions for summary judgment and there is no need for discovery upon the only motion to dismiss which we granted, since it turned upon the contents of the pertinent claims documents and COFD, which are not in dispute. Accordingly, we deny appellant's motions for limited discovery.

CONCLUSION

We deny, as moot, the government's motion for summary judgment in ASBCA No. 61640. We deny the government's motion to dismiss ASCBA No. 61641. We grant the government's motion to dismiss ASBCA No. 61643. Additionally, we deny appellant's motions for limited discovery.

An order addressing further proceedings in these appeals will follow.

Dated: August 25, 2021

KENNETH D. WOODROW
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

J. REID PROUTY
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 61640, 61641, 61642, 61643, 61708, Appeals of Penna Group, LLC, rendered in conformance with the Board's Charter.

Dated: August 30, 2021

PAULLA K. GATES-LEWIS
Recorder, Armed Services
Board of Contract Appeals